**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON DIVISION**

JD LEWIS, JR.                                                          **PLAINTIFF**

VS.                                 **CAUSE NO.  3:12-cv-53-CWR-FKB**

CITY OF JACKSON, MISSISSIPPI,
OFFICER KEVIN NASH, IN HIS
INDIVIDUAL CAPACITY                                 **DEFENDANTS**

**CITY OF JACKSON'S AND KEVIN NASH'S
MEMORANDUM IN SUPPORT OF
<u>MOTION FOR  SUMMARY JUDGMENT</u>**

**COMES NOW** Defendant City of Jackson[1] and Officer Kevin Nash, individually, by and through counsel and submits this Memorandum of Authorities in Support of Motion for Summary Judgment, and in support thereof would show unto this Court the following:

**INTRODUCTION**

This incident arises from an incident where Plaintiff was intoxicated, careened his vehicle into a tree and was ultimately apprehended by Officer Nash as a burglary suspect and later released.  Plaintiff's basic complaint is this:  that he careened his car into a tree, the airbags deployed causing injuries to his chest, arms and ribs, that he was handcuffed, placed in a hot police car, and allegedly not given medical treatment.  There is no evidence before this Court to supports Plaintiff's allegation that Officer Nash used excessive force in apprehending the Plaintiff, that Plaintiff was denied medical care or that any of Plaintiff's constitutional rights were violated.

---

[1] Officer George Fields is sued in his official capacity in this matter; however, it is axiomatic that when an officer is sued in his official capacity it is tantamount to suing the City itself.  *See **Kentucky v. Graham,*** 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed. 114 (1985).

On the day in question, Plaintiff engaged in an altercation with his cousin's boyfriend after coming home from a night club.  Plaintiff was intoxicated, and Horton, Plaintiff's boyfriend, fired shots at the Plaintiff.  Plaintiff fled the apartment complex in a vehicle and subsequently crashed the vehicle into a tree.  Plaintiff then ran to a residence, trying to call for help.[2]  However, the homeowners thought he was a burglar and called the police.  Officer Kevin Nash responded to the call.  Plaintiff fled on foot, but was apprehended by Nash.  Officer Nash then learned that Plaintiff was the victim in the shooting at the apartment complex.  Officer Nash then asked if Plaintiff needed any medical assistance, which was refused, and Plaintiff was released at a convenience store.

The issues before this Court on summary judgment are: 1) whether the City of Jackson acted deliberately indifferent in training and supervising its officers pursuant to 42 U.S.C. §1983; 2) whether J.D. Lewis's substantive and procedural due process rights were violated pursuant to 42 U.S.C. §1983;  3) whether Nash is liable for Plaintiff's state law claims of assault, intentional infliction of emotional distress and false imprisonment; and 4) whether Officer Kevin Nash is entitled to qualified immunity for his actions when briefly detained Lewis.

## FACTUAL/PROCEDURAL BACKGROUND

On June 12, 2011, Plaintiff J.D. Lewis drove from Yazoo City to Jackson to visit his cousin and to go to a night club.  See Ex. A., p. 32-33, Ex, E, Ex, F., Mr. Lewis got into an altercation with his cousin's boyfriend, Mr. Horton, and Horton started firing shots at Lewis.  *Id.*  Plaintiff fled the scene in a vehicle, crashing it into a tree, causing the airbag to deploy and causing the Plaintiff to sustain injuries to his chest, ribs, neck,

---

[2] Curiously, Plaintiff does not recall going to this residence to ask for help.

and arm. Ex. C., pgs. 21-22.  Plaintiff then ran to Windsor Drive  to try to call for help.  See Ex. A., p. 27.  The owners of the dwelling thought Lewis was a burglar and called the police, whereupon Officer Nash responded to the call.  Ex. B, pg. 28.  Curiously, Plaintiff does not recall going to this residence. Ex. C, pg. 25-26.  Office Nash testified that when he arrived at the residence, Plaintiff fled and Officer Nash gave foot chase. Ex. B., p. 28.  Officer Nash grabbed the suspect's arm and forced him to the ground.  *Id.*  The Plaintiff was placed in handcuffs.  *Id.*  Officer Nash stated that Plaintiff was visibly intoxicated.  *Id.* at p. 36.

At this time, Sergeant Barbara Folsom arrived on the scene because she was investigating a shooting that had happened in the neighborhood. Ex. A., p. 26.  She spoke to Lewis, and Lewis informed her that he was trying to get help because he was in an accident and was being shot at by someone.  *Id.* at 27.  Plaintiff was taken out of the handcuffs, and at this time, his role changed from "suspect" to "victim."  *Id.*  Lewis was asked a number of times if he needed medical attention, and he refused, only stating that he was not from Jackson and needed a ride home.  *Id.* at 28—30.  Mr. Lewis did not live within the City limits, so after the investigation of the shooting concluded, Officer Nash transported Plaintiff to a convenience store so that he could make contact with someone to pick him up.  *Id.* at 35. Ex, B, p. 42.  Thereafter, Plaintiff went to the hospital claiming injuries.

## STANDARD OF REVIEW

A motion for summary is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Rule 56(c) mandates the

entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden for proof at trial." ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).   To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon ***conclusory allegations, improbable inferences, and unsupported speculation***." ***Krim v. BancTexas Group, Inc.,*** 989 F.2d 1435, 1449 (5th Cir. 1994) (emphasis added). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 252 (1986).   As discussed *infra*, the Plaintiff fails to set forth any set of facts that would merit relief against Officer Nash under 42 U.S.C. § 1983.

## ARGUMENT

### I.   Plaintiff's claims against the City for failure to train to 42 U.S.C. §1983 must be dismissed as a matter of law.

Plaintiff alleges that the City "negligently and/or wantonly failed to train each of the aforementioned Defendant officers to properly protect, investigate, interrogate, detain, accost, search, prosecute, judge and/or arrest the Plaintiff . . ." [Docket No. 11, ¶29.]  To establish municipal liability under § 1983 , a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. ***Piotrowski v. City of Houston,*** 237 F.3d 567, 578 (5th Cir. 2001) (citing ***Monell v. New York City Dep't of Social Servs***., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  It is well-

established that a municipality is not liable under § 1983 on the theory of respondeat superior. ***Monell***, 436 U.S. at 694. Cities face § 1983 liability only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." ***Id.*** As discussed *infra,* Plaintiff cannot set forth any sufficient evidence that demonstrates municipal liability under ***Monell***. There is no evidence of a policy of failure to train within the Jackson Police Department, no evidence that a policymaker adopted and promulgated an unconstitutional policy and certainly no evidence that this policy was the moving force behind Plaintiff's alleged constitutional violation. Plaintiff simply cannot place any concrete evidence before this Court that creates a genuine issue of material fact that this matter should proceed to trial.

### A.  Plaintiff cannot establish an official custom, policy or practice that resulted in a deprivation of a constitutional right.

### 1.  There is no policy of failing to train.

Plaintiff cannot place any evidence before this Court that the training rendered to the officers at the Jackson Police Department is so inadequate, and the need for different training is so obvious, that the alleged failure to train amounts to "deliberate indifference" for the Plaintiff. "It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." ***Brown v. Bryan Cnty., Okla.***, 219 F.3d 450, 457 (5th Cir. 2000) (subsequent appeal after remand of ***Bryan Cnty.***, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626) (holding that a sheriff's failure to train a county deputy that resulted in constitutional violation could be county policy). In a § 1983 claim for failure to train or supervise, the plaintiff must show that: "(1) the

supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference" to the plaintiff's constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998)).

Deliberate indifference is a key component of a failure to train claim, as a failure to train claim supports § 1983 liability "only where the failure to train amounts to a deliberate indifference to the rights of the persons whom the [officers] come into contact." *City of Canton,* 489 U.S. at 388 (emphasis added). If, in light of the duties assigned to specific officers, the need for more or different training is so likely to result in the violation of constitutional rights, the policymakers of a city can reasonably be said to have been deliberately indifferent to the need. *Id*. at 390. For liability to attach in this circumstance, the identified deficiency in a city's training program must be closely related to the ultimate injury. *Id*. at 391.  To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman ,* 571 F.3d at 395  (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). Proof of deliberate indifference generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). Deliberate indifference of this type is a more stringent standard than simple or even heightened negligence. *Piotrowski*, 237 F.3d at 579.

6

Plaintiff cannot present sufficient admissible proof to meet the stringent standard that the failure to train amounted to "deliberate indifference" on behalf of the City. Plaintiff has not attempted to establish a pattern of alleged violations that suggest that the Jackson Police Department's training is so inadequate that it is obviously likely to result in a constitutional violation.  Plaintiff has not deposed anyone from the Jackson Police Training Academy, has not established that the alleged lack of training caused Plaintiff's constitutional deprivation, and certainly cannot present any sufficient evidence to this Court to survive summary judgment.   Plaintiff had the opportunity to depose two 30(b)(6) witnesses from the City of Jackson, yet failed to ask any questions on training.  Sergeant Joseph Wade, who is the training coordinator for the Jackson Police Academy was designated as both a 30(b)(6) witness and as the City's expert witness, yet Plaintiff failed to ask any questions regarding training by the City of Jackson.  In fact, none of Officer Nash's training records were ever requested or were ever a subject of discovery.  There can be no showing that the City of Jackson failed to properly train Officer Nash.  It is important to point out that Plaintiff's sole claim is for "failure to train."  Plaintiff alleges that the City "failed to monitor," but does not allege that the City failed to supervise.  [Docket No. 29, ¶29.].  Plaintiff is bound by his pleadings, thus the only claim Plaintiff properly places before this Court is a failure to train claim, and Plaintiff has wholly failed to establish that a City official's actions amounted to "deliberate indifference" to his constitutional rights.

As previously stated, deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. ***Board of County Comm'rs of Bryan County v. Brown***, 520 U.S. 397,

410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Mere negligence will not suffice, and "deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a ... failure to act reasonably. *Id*. at 649 (citations omitted). In other words, an official has to be both aware of, and disregard, an excessive risk of harm.   Plaintiff's claim must be dismissed. First, the Plaintiff has not demonstrated the City of Jackson failed to properly supervise or train its officers. Second, the Plaintiff has not produced sufficient proof that a causal nexus exists between the actions of Officer Nash and the alleged failure to train. Third, the Plaintiff has failed to name an official that was charged with supervising the officers allegedly involved in this incident. Finally, there is no evidence exists before this Court that suggests that any City of Jackson official acted with deliberate indifference. Thus, the City of Jackson is entitled to judgment as a matter of law on this claim

## B.    Promulgated by the official policymaker

The next prong that Plaintiff must establish in order to recover under *Monell* is to demonstrate that a policymaker promulgated the alleged unconstitutional policy.  A policy is promulgated by the municipal policymaker when it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). "Courts have consistently found that chiefs of police are official law enforcement policymakers for the purposes of municipal liability under § 1983 ." *Kincheloe v. Caudle*, No. A-09-CV-10-LY, 2009 U.S. Dist. LEXIS 96371, at *57 (W.D. Tex. Oct. 16, 2009) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1279 n.45 (5th Cir. 1992) (finding that the chief of police is the principal

policy maker for the Arlington Police Department)).  In ***Bell v. City of El Paso***, the Court noted that the chief of police for the El Paso Police Department — in that case Gregory Allen — was a policymaker.  No. EP-08-CV-331-FM, 2009 U.S. Dist. LEXIS 127084, at *29 (W.D. Tex. Dec. 18, 2009).  Plaintiffs must demonstrate that the final policymaking official for the municipality had actual or constructive knowledge of the policy.  ***Webster***, 735 F.2d at 842. The Fifth Circuit has held that "[a]ctual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." ***Bennett v. City of Slidell***, 728 F.2d 762, 768 (5th Cir. 1984) (en banc).

Plaintiff  does not even allege that a policymaker had knowledge of an alleged unconstitutional policy in his Complaint, and Plaintiff certainly does not state how a policymaker allegedly promulgated an unconstitutional policy.  Plaintiff does not name Chief Coleman as a defendant to this action, and Plaintiff never deposed one single policymaker within the City of Jackson, let alone the Chief of Police.  Plaintiff never definitely established if Chief Coleman is, in fact, a policymaker.  There is a fine distinction between a policymaker and a decision maker. ***Jett v. Dall. Indep. Sch. Dist***., 7 F.3d 1241, 1247 (5th Cir. 1993). The fact that an official's decisions are final is insufficient to demonstrate policymaker status. ***Id***. at 1248.   Plaintiff never addressed these crucial questions during discovery.  More importantly, Plaintiff never established whether Chief Coleman implicitly or explicitly allegedly adopted an unconstitutional policy.   Further, there is absolutely no evidence that Chief Coleman had knowledge that

Officer Harris was allegedly using excessive force.   There are many missing elements to Plaintiff's claim, and one crucial element is the failure to put forth evidence of a policymaker who promulgated an alleged unconstitutional policy.  Therefore, Plaintiff's §1983 claim against the City must fail.

### C. Moving force behind the violation

The last prong of the *Monell* analysis, i.e., the moving force/causation prong, is perhaps the most gaping hole in Plaintiff's case, yet the most important, as Plaintiff cannot put forth sufficient proof that demonstrates how any City policy or custom directly caused the deprivation of Lewis's constitutional rights. In fact, Plaintiff's Complaint does not allege that there was a "direct causal connection" between the City's alleged failure to supervise and train Officer Nash and the violation of Lewis's constitutional rights.  In order to recover against a municipality for a claim under §1983, a plaintiff must establish that the policy was the "moving force" behind the violation. That is, there must be a "direct causal link" between the policy and the violation. *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). This requires "more than a mere 'but for' coupling between cause and effect." *Fraire*, 957 F.2d at 1281 (5th Cir. 1992) (citations omitted). The Fifth Circuit has emphasized that the moving-force element of municipal liability "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Snyder v. Trepagnier,* 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). But if a policy is found to have a "known or obvious" consequence of infringing on federally protected rights in the first step of the test (which may be found in failure to train cases), it is difficult to see how such a

policy could fail to be a "moving force " behind these known or obvious harms when they finally come to fruition, as is required by this third step. *See Bryan Cnty.*, 520 U.S. at 409-10 ("The high degree of predictability may also support an inference of causation — that the municipality's indifference led directly to the very consequence that was so predictable.").

In the case at bar, Plaintiff cannot produce evidence that the City's alleged failure to train resulted the deprivation of Lewis's constitutional rights. That is, Plaintiff cannot present any evidence that the apprehension of Lewis would not have occurred if different steps in training or supervision were taken.  There also is no evidence that the putatively poor quality of training and supervision was known to supervisors and policymakers and was so obvious that it is difficult to see how this policy is a "moving force" behind a violation of a constitutional right.  Thus, there is insufficient evidence to support a jury finding that there was a failure to train and/or supervise. For this reason, the City of Jackson requests that this Court grant summary judgment as a matter of law.

## II.    Plaintiff's claims for violation of Due Process must fail.

Plaintiff claims that "Defendant Nash's apprehension of Plaintiff without probable cause deprived Plaintiff of his right to procedural due process."  [Docket No. 11, ¶ 23].  Plaintiff also alleges that "Defendant Nash's attack upon Plaintiff violated Plaintiff's substantive due process [by] prohibiting medical treatment and/or Plaintiff's access to medical treatment."  *Id.*  As established through discovery, neither of these claims have merit, and Plaintiff cannot present sufficient evidence to support these claims on summary judgment.  In order for Plaintiff to succeed on its procedural and substantive due process claims, there must be a showing that the City deprived Plaintiff

of a protected interest in life, liberty, or property. *Shelton v. City of Coll. Station*,
780 F.2d 475, 479 (5th Cir. 1986).

## A. Substantive Due Process

In order to succeed on a substantive due process claims, Plaintiff must establish
(1) the existence of a protected property or liberty interest; and (2) a deprivation of that
interest. *Simi Inv. Co. v. Harris County, Tex*., 236 F.3d 240, 249 (5th Cir. 2000);
*Mercado Azteca, L.L.C. v. City of Dallas, Tex*., 2004 U.S. Dist. LEXIS 18535,
2004 WL 2058791 * 6 (N.D. Tex. Sept. 14, 2004)(citing [*6] *Honore v. Douglas*, 833
F.2d 565, 569 (5th Cir. 1987)(deprivation of due process by arbitrary or capricious
actions or decisions)).  Here, Plaintiff claims that his substantive due process rights
were violated because he was allegedly denied medical treatment.  Plaintiff seems to
claim that he was a pretrial detainee; however, Plaintiff was never under arrest, never
charged with a crime and never processes at the City jail.  See Ex. B. p. 47. So, the
standard for analyzing constitutional challenges by pretrial detainees under *Hare v.
City of Corinth, Miss.* 74 R. 3d 633 646 (5th Cir. 1996) does not come into play.  That
is, this Court need not address the question of whether the unconstitutional conduct is a
"condition of confinement" or "episodic act or omission." *See Scott v. Moore*, 114 F.3d
51, 53 (5th Cir.1997) (en banc).   The Court only needs to determine if there was a
deprivation of a legitimate protected property or liberty interest.  The Plaintiff cannot
demonstrate that his substantive due process rights were violated.

The record evidence before this Court demonstrates that Plaintiff's version of the
facts is murky, at best.  Plaintiff's deposition testimony greatly differs from the facts
alleged in the Complaint and from the testimony and given by the officers at the scene.

Sergeant Barbara Folsom[3] testified that after Lewis careened his vehicle into a tree, she received a burglary call.  Ex. A., p. 27.  When she responded to the scene, she encountered Lewis, who was visibly intoxicated, and she learned that he had been involved in an altercation with his cousin's boyfriend, who was shooting at him.  *Id.*  Lewis told Sergeant Folsom that he was not attempting to break into the dwelling; rather, he was trying to get help.  *Id.*  It was at this time Lewis was taken out of handcuffs, and his role changed from suspect to victim due to the fact that there was a shooting.  *Id.* at 27-28.  Sergeant Folsom asked Lewis if he needed medical attention, and he refused, stating that he only needed a way home because he was not from the Jackson area.  *Id.* at 29, 30, 33.

Officer Nash testified that he responded to a burglary call, and he observed an individual, later identified as J.D. Lewis by a window, and it appeared that he was trying to enter the dwelling.  Ex. B. p. 28.  Officer Nash ordered the suspect to stop, and the suspect fled the scene.  *Id.*  Officer Nash testified that he arrived at the scene in his vehicle, with his blue lights activated, which made his police presence known.  *Id.*  Officer Nash gave foot chase to the suspect, performed a takedown and handcuffed the Plaintiff.  *Id.*  Officer Nash noted the strong smell of odor on Lewis's breath, and testified that Lewis was acting "hysterical" and speaking "gibberish" once he was apprehended.  *Id.* at 36.  At this point, Sergeant Folsom responded to the scene and Officer Nash learned that Lewis was involved in the shooting on Gay Court.  *Id.* at 38.  Lewis was taken out of the handcuffs and began speaking with Sergeant Folsom while Nash took an inventory of the wrecked vehicle.  *Id.* at 38-41.  Nash testified that Lewis

---

[3] Despite counsel opposite's continued disrespect for Sergeant Folsom throughout her deposition, she has been employed with the Jackson Police Department for 11 years and achieved the title of Sergeant through a competitive exam.  Additionally, she has held positions in the Internal Affairs Department of the Jackson Police Department.  See Ex. A, pgs. 8-9, 43.

never asked for medical treatment and never asked for an ambulance to be called and only wanted to go home.  *Id.* at 42, 44.

In fact, the Plaintiff testified that his injuries were caused from the airbags after he careened his car into the tree.  Ex. C. at pg. 16.  Lewis testified that he injured his chest, his neck and his arm.  *Id.* at pg. 16, 22, 23.  He attributes all of the "injuries incurred" as a result of this incident to the airbag being deployed, not to any actions by the Jackson Police Department.  It seems as though Mr. Lewis's basic complaint is that he was hot in the police vehicle, and he did not like being handcuffed by Mr. Nash.  *Id.* at 31 – 33.  Importantly, during deposition, Lewis stated that the only visible injuries were scratches on his head.  *Id.* at 43.  He testified that he did not have any broken limbs, and that he simply went to the emergency room for chest pain, and his legs, arms and wrists were hurting.  *Id.* at 44.  So, Lewis was not exhibiting any outward signs of serious injuries, and he went to the emergency room after the accident for the exact same injuries he claims were caused by the airbag, not by any member of the Jackson Police Department.   Plaintiff cannot place sufficient summary judgment evidence before this Court that the City of Jackson deprived him of his substantive due process rights.

Even if Lewis was a pretrial detainee, Plaintiff's claim for denial of medical treatment fails because he cannot meet his burden of establishing deliberate indifference to a ***serious medical need*** and thus has not established a constitutional violation. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether a state official acted with deliberate indifference to the individual's constitutional rights. ***Gibbs v. Grimmette,*** 254 F.3d 545, 548 (5th Cir. 2001). "In order to prove deliberate

indifference to **_serious medical needs_**, and thus a constitutional violation, a prisoner must show that a state official knew of and disregarded an excessive risk to inmate health or safety.  *"See* **Stewart v. Murphy**, 174 F.3d 530, 534-35 (5th Cir. 1999) (emphasis added).   Plaintiff cannot place any evidence before this Court that demonstrates a genuine issue of material fact that anyone in the City of Jackson acted deliberately indifferent to his rights or that he had a serious medical need.  As demonstrated in his own deposition, the only visible injury was a scrape on his head. Plaintiff cannot produce medical bills or a medical expert that demonstrates that he had such a serious medical injury, which was so obvious that Officer Nash or Sergeant Folsom would have a duty to provide medical care.  As such, Plaintiff's claims for violation of his substantive due process rights must be dismissed.

### B. Violation of Procedural Due Process Rights

Plaintiff alleges that "Defendant Nash's apprehension of Plaintiff without probable cause deprived Plaintiff of his right of procedural due process."  Procedural due process concerns the fundamental fairness of a State's procedures. *See* **Mathews v**. **Eldridge**, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process **procedural** due **process** protection; and (2) if so, what process is due. *Id.* at 332-33. However, claims of procedural due process violations are not cognizable in federal court if adequate post-deprivation state tort remedies exist. **Parratt v. Taylor**, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (overruled on other grounds by **Daniels v. Williams,** 474 U.S. 327, 330, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); see also **Alexander v. Ieyou**b,

62 F.3d 709, 712 (5th Cir. 1995) (same).

Applying this precept to the instant case, it is clear that Plaintiff's claim of deprivation of procedural due process cannot proceed, since Plaintiff has adequate post-deprivation state tort remedies to pursue a recovery for his alleged injuries. Plaintiff alleges that Defendant Nash violated his procedural due process rights when he "apprehended [him] without probable cause." [Docket No. 11, ¶23.].   However, Plaintiff's allegations involve the actions of one police, Officer Nash; and Plaintiff has already bought state tort actions against Nash to recover for the injuries he alleges. See, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (recognizing that "the tort of conversion fulfills this requirement [of an adequate post-deprivation remedy]"). Importantly, Plaintiff does not challenge the fundamental fairness of Mississippi's procedures for depriving individuals of liberty or property interests, and "a complaint does not state a valid procedural due process objection—and a valid § 1983 claim—if it does not include a challenge to the fundamental fairness of the State's procedures." *Daniels v. Williams*, 474 U.S. 327, 339, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (Stevens, J., concurring). Accordingly, because there is are adequate post-deprivation remedies available to Plaintiff under state law, his claims based on alleged violations of procedural due process must be dismissed.

### C.    Equal Protection Claim

Plaintiff's alleges that "he was intentionally treated differently from others similarly situated, and there was no rational basis for such treatment."  [Docket No. 11, ¶23].  Plaintiff has absolutely no evidence to support this contention.  The Equal Protection Clause prohibits differential treatment of persons similarly situated without a

rational basis, ***Mikeska v. City of Galveston,*** 451 F.3d 376, 381 (5th Cir. 2006), and protects individuals from governmental action that treats similarly situated individuals differently, *J****ohn Corp. v. City of Houston,*** 214 F.3d 573, 577 (5th Cir. 2000).  To state a claim of racial discrimination under the Equal Protection Clause and section 1983 , the plaintiff "must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." ***Bowlby v. City of Aberdeen, Miss***., 681 F.3d 215, 227 (5th Cir. 2012).  Plaintiff cannot proffer any evidence, whether direct or circumstantial, that Plaintiff was treated differently or was discriminated against. Indeed, Plaintiff is African-American and Officer Nash is African-American.  This claim is completely without merit.

### III.   Plaintiff's State Law Claims Against the City.

Plaintiff brings four state law claims against the City for intentional and/or negligent infliction of emotional distress, civil assault and battery, false arrest/false imprisonment and negligence *per se.*   All of Plaintiff's state law claims must be dismissed he is barred for recovery pursuant to the Mississippi Tort Claims Act.

### A.  Intentional and Negligent Infliction of Emotional Distress.

Plaintiff alleges that the City intentionally and/or negligently inflicted emotional distress by "holding him in a patrol car for four hours, falsely accusing Plaintiff of a crime . . . and denying Plaintiff medical treatment."  [Docket No. 11, ¶16.].  Section 11-46-5(2) of the Mississippi Tort Claims Act (MTCA) provides that "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for

17

any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." The Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA under this section. *See **Zumwalt v. Jones County Bd. of Supervisors**, 19 So. 3d 672, 688-89 (Miss. 2009)  Intentional infliction of emotional distress can be predicated on behavior that is "malicious, intentional**,** willful, wanton, grossly careless, indifferent *or* reckless." **Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.,** 759 So. 2d 1203, 1211 (Miss. 2000) Thus, to the extent intentional infliction of emotional distress is predicated on malicious conduct, Plaintiff's claim is outside the scope of the MTCA.   The City itself cannot be held liable for intentional torts; therefore, Plaintiff's claim for intentional infliction of emotional distress against the City must be dismissed.  It is important to note that Plaintiff does not specifically make an allegation against Officer Nash for intentional infliction of emotional distress; therefore, this claim is taken to be against the City, itself.

As far as Plaintiff's claims of negligent infliction of emotional distress, the Mississippi Supreme Court "has been clear in holding that a plaintiff a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct." **Morgan v. Greenwaldt,** 786 So. 2d 1037, 1044 (¶23) (Miss. 2001).   Here, Plaintiff cannot prove foreseeability.  In fact, Plaintiff cannot prove damages of mental anguish as he has never seen a psychologist, a psychiatrist, a therapist, a counselor or ever talked about his emotional issues to anyone else.  See Ex. A. pgs. 45-46. He has never taken any medication as a result of this incident and never been diagnosed with a

18

post-traumatic stress disorder or depression as a result of his "emotional distress." *Id.* As such, Plaintiff's claims must be dismissed.

### B.  Civil Assault and Battery.

Plaintiff claims that the City is liable for civil assault and battery because Officer Nash "inflicted physical pain upon Plaintiff, by severely beating, kicking, handcuffing and punching him, causing injuries to his neck, ribs, right ankle, right toe, chest, back, right shoulder and hands."  [Docket No. 11, ¶18].  Notwithstanding the fact that Plaintiff cannot recover against the City for an intentional tort, as established *supra*, Plaintiff cannot place any evidence before this Court to support these allegations; quite the opposite.   Lewis testified that all of the injuries incurred were a result from the airbag being deployed when he crashed his car into the tree.  Ex. C., pgs. 21, 23.   Further, when asked what Officer Nash did to him, Lewis basically explained that Officer Nash pulled his hands behind his back and placed the handcuffs on him.  *Id.* at 31-33.  There is no evidence of punching, beating or kicking.  Likewise, there is no evidence that any of the injuries sustained were a result of excessive force used by Nash.  Plaintiff's claims must be dismissed.

### C.  False Arrest/False Imprisonment

Plaintiff asserts one sentence in his Complaint that "Defendant Nash . . . took actions to falsely arrest and detain Plaintiff."  It has already been established that Plaintiff was never arrested, charged with any crime or taken to the City jail.  So, based on this fact alone Plaintiff's claim for false arrest must fail.

To establish a claim for false imprisonment, Lewis must prove that he was: (1) detained and (2) that such detainment was unlawful. ***Whitten v. Cox***, 799 So. 2d 1, 9 (P12) (Miss. 2000). "The second element turns on whether, looking at the totality of

the circumstances, the actions of the defendant were 'objectively reasonable in their nature, purpose, extent and duration". *Id.* The plaintiff must first show that there was an ***actual detention***. ***Whitten***, 799 So. 2d at 9 (P12). The Mississippi Supreme Court has stated that "it is essential, however, that the restraint be against the plaintiff's will; if he agrees of his own choice to surrender his freedom of motion, as by accompanying the defendant voluntarily to clear himself of an accusation, rather than yielding to the constraint of a threat, there is no imprisonment". ***State ex rel. Powell v. Moore***, 252 Miss. 471, 478, 174 So. 2d 352, 355 (1965).

Plaintiff cannot offer any evidence that he was held against his will.  Sergeant Folsom testified that when it was discovered that he was a victim of a shooting, he was taken out of handcuffs and was walked to the scene of the accident.  See Ex. A, p. 27.  Sergeant Folsom testified that at this point he went from being treated like a "suspect" to being treated like a "victim."  *Id.*   Officer Nash also stated that when Lewis was placed in the car, he was un-handcuffed.  See Ex. B, p. 38.  Lewis was still detained because Officer Nash and Sergeant Folsom were still attempting to ascertain Lewis's part in the shooting.  *Id.* at p. 40-41.  After this, Lewis was dropped off at a gas station, as requested.  *Id.* at 42.  "[W]here no force or violence is actually employed, the submission of the plaintiff must be to a reasonably apprehended force." ***Martin v. Santora***, 199 So. 2d 63, 65 (Miss. 1967). "The circumstances merely that one considers himself restrained in his person is not sufficient to constitute false imprisonment unless it is shown that there was a reasonable ground to have believed defendant would resort to force if plaintiff attempted to assert her right to freedom." ***Id***.  Plaintiff cannot put forth sufficient evidence to establish a claim for false imprisonment.  In fact, nowhere in Plaintiff's deposition does Plaintiff

20

claim that he was held against his will.  As such, Plaintiff's claim must be dismissed.

### D. Negligence *Per Se*

Plaintiff's final state law claim is for negligence.  [Docket No. 11, ¶¶ 42-45].  This claim must be dismissed because pursuant to the Mississippi Tort Claims Act, Plaintiff cannot recover against the City of Jackson or Officer Nash for a claim for mere negligence.  The Mississippi Tort Claims Act provides:

> (1)    A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim...
>
> > (c)    Arising out of any action or omission of an employee of a governmental entity engaging in the performance or execution of duties or activities relating to police or fire protection ***unless the employee acted in reckless disregard*** of the safety and well being of any person not engaged in criminal activity at the time of the injury;
> >
> > (d)    Based upon the exercise or performance or the failure to exercise or perform a ***discretionary function*** or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Miss. Code Ann. § 11-46-9(1)(c) and (d) (emphasis added).

The reckless disregard standard is one higher than gross negligence, and embraces willful or wanton or intentional conduct, which requires knowingly and intentionally doing a thing or wrongful act.  ***Kelley v. Grenada County***, 859 So.2d 1049 (Miss. 2003).   In fact, reckless disregard is a higher standard than gross negligence; it is one step below specific intent.   ***Turner***, 735 So.2d at 230.   Stated another way, Plaintiff's allegation of negligence fails to yield any relief, and such claim affords the  City of Jackson immunity under the Mississippi Tort Claims Act.

**IV.   Plaintiff's federal claim against Officer Kevin Nash is barred by the doctrine of qualified immunity.**

Now, the City turns to Plaintiff's claims against Officer Nash in his individual capacity.  Plaintiff vaguely claims that Officer Nash "used excessive force." [Docket No. 11, ¶27].  However, there is absolutely no evidence that Plaintiff can place before this Court that demonstrates Officer Nash used excessive force at any time, thus there was no violation of a clearly established constitutional right. Further, Officer Nash's actions were objectively reasonable under the circumstances.[4]  Therefore, Officer Nash is entitled to qualified immunity for all alleged federal claims.

The doctrine of qualified immunity operates to shield "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Assessing an officer's entitlement to qualified immunity consists of two separate inquiries. First, the Court ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by* *Pearson v. Callahan*, --- U.S. ----, ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). We then ask whether the right violated was clearly established at the time. *Id*. While it is "often appropriate" to answer these two questions sequentially, courts are vested with "sound discretion in deciding

---

[4] Likewise, as Nash's actions were objectively reasonable, no *Monell* liability can attach to the City.

22

which of the two prongs of the qualified immunity analysis should be addressed first."
**Pearson**, 129 S.Ct. at 818.

### A.  There was no constitutional violation.

Plaintiff alleges that defendant used excessive force when he handcuffed him. However, Plaintiff cannot establish a Fourth Amendment violation because there was no excessive force; i.e., the injuries received are not from the alleged force applied by Nash. Further, Plaintiff's injuries are *de minimis*.  The Fifth Circuit has explained that "the use of excessive force to apprehend a subject implicates the Fourth Amendment's guarantee against unreasonable seizures." **Colston v. Barnhart**, 130 F.3d 96, 99 (5th Cir. 1997) (citations omitted); *see also* **Ramirez v. Knoulton**, 542 F.3d 124, 128 (5th Cir. 2008) (citations omitted). "To prevail on an excessive force claim, a plaintiff must establish: '(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" **Freeman v. Gore**, 483 F.3d 404, 416 (5th Cir. 2007) (citations omitted); *accord* **Ballard v. Burton**, 444 F.3d 391, 398 (5th Cir. 2006) (citing **Graham v. Connor**, 490 U.S. 386, 395-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).

To determine whether a seizure was objectively reasonable, the trial court examines "whether the totality of the circumstances justified a particular sort of search or seizure." **Tennessee v. Garner**, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." **Delaware v. Prouse**, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979) (citations omitted). To "gaug[e] the objective

23

reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for that force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (citation omitted). This balancing test "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Here, plaintiff has alleged that defendant subjected him to excessive force when he handcuffed plaintiff.   However, Plaintiff testified that all of the injuries sustained from the night in question were a result of the airbag being deployed in the car that he crashed into the tree.  It is well-settled in the Fifth Circuit that "handcuffing too tightly, without more, does not amount to excessive." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *accord Freeman*, 483 F.3d at 417 (citations omitted). To establish a claim for excessive force, Lewis must demonstrate an injury that, while not necessarily significant, is more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citation omitted). In *Tarver*, the Fifth Circuit found the plaintiff's allegations that, as a result of being handcuffed, he suffered "acute contusions of the wrist and psychological injury" to state merely *de minimis* harm. *Id.* (internal quotation marks omitted). A swollen wrist has also been found to be *de minimis*, as has bruising of the wrists and arms. *See Glenn*, 242 F.3d at 314; *Freeman*, 483 F.3d at 417.  Such are the exact allegations and injuries in the case at bar.

Plaintiff has alleged no long-term damage resulting from being handcuffed too tightly.  In fact, Plaintiff has not alleged any damages at all from being handcuffed. Rather, he stated that he crashed his car into a tree and suffered a hurt chest, neck, shoulder and ribs as a result of the air bag being deployed. Ex. C, pgs. 22-23.  He cannot place any medical evidence before the Court that he is in daily pain, that he is taking daily medication or that any pain is a result of being handcuffed.   Thus, the most that

plaintiff claims is that the handcuffs were applied too tightly, causing him some pain. These minor injuries do not rise to a claim of excessive force, and defendant is entitled to summary judgment in his favor.   Because Plaintiff's injuries are *de minimis*, this Court need not address the question of whether Officer Nash's alleged use of force was objectively reasonable under the circumstances.   Plaintiff's claim fails because there is no evidence before this Court that the use of force was excessive to the need.

### B.  Officer Nash did not violate a clearly established right.

Even if this Court found contrary to the above conclusion, i.e., that Nash violated Lewis's Fourth Amendment rights, summary judgment in favor of Nash would still be appropriate because his conduct was objectively reasonable in light of the clearly established legal rules at the time he was detained. To overcome the affirmative defense of qualified immunity, a plaintiff must show that the government official violated clearly established statutory or constitutional rights of which a reasonable person would have known. ***Harlow v. Fitzgerald,*** 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity shields from civil liability "all but the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs****, 475* U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).  If the law at the time of a constitutional violation does not give the officer "fair notice" that his conduct is unlawful, the officer is immune from suit. ***Brosseau v. Haugen***, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004). This standard thus protects an officer with a mistaken, yet reasonable, understanding of the law from the "hazy border between excessive and acceptable force." ***Id*** at 201, 125 S. Ct. at 600 (quoting ***Saucier v. Katz***, 533 U.S. 194, 206, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001)).

25

Accordingly, the "objective legal reasonableness" of an officer's conduct must be "assessed in light of the legal rules that were 'clearly established' at the time" of his action. ***Anderson v. Creighton***, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987) (citation omitted). A right is clearly established if, in light of preexisting law, the unlawfulness of an action would be apparent to a reasonable officer. ***Id***. at 640, 107 S. Ct. at 3039. The inquiry here is whether, under the law in effect at the time that Nash detained Harris, no reasonable officer could have believed that it would have been appropriate to detain a suspect who was believed to be breaking into a dwelling.[5]  Thus, far from clearly establishing that Officer Nash's conduct was unlawful, the controlling authority in this jurisdiction does not prohibit an officer from detaining a suspect who is believed to be breaking into a dwelling.  Moreover, even if contrary authority existed, the "cases taken together [would] undoubtedly show that this area is one in which the result depends very much on the facts of each case" and certainly would not "clearly establish" that Officer Nash's conduct violated the Fourth Amendment. ***Brosseau v. Haugen,*** 543 U.S. 194, 201, 125 S. Ct. 596, 600, 160 L. Ed. 2d 583 (2004). Therefore, Officer Nash's actions were objectively reasonable under clearly established law, and he is entitled to qualified immunity.

---

[5]  The "right" that must be clearly established in not Lewis's Fourth Amendment right to be free from unreasonable seizure.  The Supreme Court has explained that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if was clearly established." ***Wilson v. Layne,*** 526 U.S. 603, 615, 119 S.Ct. 1692, 1700, 143 L.Ed. 191 (1999).  Otherwise, "plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtual unqualified liability simply by alleging violation of extremely abstract rights. ***Anderson,*** 483 U.S. 639.  Thus, the inquire conducted is more particularized of whether preexisting law clearly established Lewis's right to be free from deadly force in the circumstances Nash was confronted. *See id.* at 601-41.

## CONCLUSION

The City of Jackson is entitled to summary judgment as a matter of law because the Plaintiff fails to establish municipal liability under all three prongs of the ***Monell*** standard.  First, Plaintiff cannot establish that the City has a custom, policy or practice of failure to train.  Plaintiffs cannot present sufficient summary judgment evidence that demonstrates either an implicit or explicit unconstitutional policy.  Secondly, Plaintiff cannot establish a policymaker of the City of Jackson had actual or constructive knowledge of the allege unconstitutional policy and promulgated it to the officers of the Jackson Police Department.  Finally, and most importantly, the Plaintiff cannot establish that the alleged unconstitutional policy was the moving force behind the constitutional violation.  That is, Plaintiff cannot establish that the putatively poor quality of training and supervision was known to supervisors and policymakers and was so obvious that it is difficult to see how this policy is a "moving force" behind a violation of a constitutional right.

Additionally, Officer Nash is entitled to qualified immunity because he did not violate Plaintiff's Fourth Amendment right.  Plaintiff cannot establish that there was excessive force used in handcuffing; i.e., the injuries received are not from the alleged force applied by Nash.  Further, Plaintiff's injuries are *de minimis.* As such, Plaintiff cannot put forth sufficient summary judgment evidence that would strip Officer Nash of his qualified immunity.

Respectfully submitted, this the 18th day of June, 2013.

> CITY OF JACKSON, MISSISSIPPI
> OFFICER KEVIN NASH,
> individually

27

By: /s/ Claire Barker_____
PIETER TEEUWISSEN, MSB# 8777
CITY ATTORNEY
CLAIRE BARKER, MSB#101312
DEPUTY CITY ATTORNEY


OF COUNSEL:

OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi  39207-2779
601/960-1799 (office)
601/960-1756 (facsimile)


**CERTIFICATE OF SERVICE**

I, Claire Barker, do hereby certify that I have this day served a true and correct copy of the above and foregoing Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment to the following:

MOORE LAW OFFICE
Carlos Moore, Esq.
Post Office Box 1487
Grenada, Mississippi 38902-1487


Submitted this the 18th day of June 2013.


/s/ Claire Barker_____
CLAIRE BARKER