IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JD LEWIS, JR.                                                                                              PLAINTIFF

v.                                                                           CAUSE NO. 3:12-CV-53-CWR-FKB

CITY OF JACKSON, MISSISSIPPI,
OFFICER KEVIN NASH, IN HIS
INDIVIDUAL CAPACITY                                                                           DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants City of Jackson's and Kevin Nash's Motion for Summary Judgment. Docket No. 49. Plaintiff opposes the motion. Docket No. 52. Defendant has replied [Docket No. 55] and the matter is ready for review. The motion is GRANTED.

**I.  Factual and Procedural Background**

This is a suit brought under 42 U.S.C. § 1983. The facts are hotly contested and both parties' version of the facts is somewhat unclear. Notwithstanding the parties' dispute of facts, a genuine issue for trial has not been created.

*A.  Lewis's Version*

According to Plaintiff, on the night of June 12, 2011, Lewis lost control of his vehicle and drove his car into a tree. *See* Dep. of JD Lewis, Jr., at Exhibit C, Docket No. 49-3, at 16, (hereinafter "Lewis Dep."). He described his accident as "bad" and indicated that it nearly knocked him unconscious. *Id*. at 22-23 and 25. The air bags deployed, causing injuries to his neck, arm and chest. *Id*. at 21-22. His cousin, Ammon Miles, was in the vehicle with him. *Id*. at 16, 22. After the accident, Lewis exited the vehicle and walked down the street searching for help. *Id*. at 31.

1

Officer Kevin Nash of the Jackson Police Department approached. Lewis recognized the vehicle as a patrol car, and ran to the middle of the street to stop it. *Id*. at 16-17. Lewis claims that when Nash approached in his patrol car, Plaintiff laid his body on the hood of the car pleading for help. *Id*. at 33-34.  Nash exited the vehicle and screamed, "Get down on the ground." *Id*. Lewis complied with the command. Nash then asked Lewis if he had been involved in a shooting. *Id*. at 17. Lewis denied being involved in a shooting,[1] but informed Nash that he had been in a car accident. Although Lewis had complied with the commands, "[Nash] threw [Plaintiff] on the ground, stepped on [his] back, [and] pulled [his] arms back as far as he could [in order] to put the hand cuffs on." *Id*. at, at 32. Plaintiff stated that this caused him to suffer more pain. *Id*. at 42 ("My neck hurt worser [sic] and my arm. I couldn't move my arm. And my – my whole body, actually.")

While Plaintiff was being arrested, Sergeant Barbara Folsom arrived on the scene. Nash repeatedly questioned Lewis about a shooting. Lewis was placed in the back seat of Nash's "hot" patrol car with the windows up where he remained for "over a period of two or three hours. . . in a terrible cramped position." *Id*., at 40-41. Nash drove Lewis to the area where the shooting had occurred, but he refused to provide Lewis medical treatment even though Lewis requested it repeatedly.[2] S*ee id.* at 17, 32. *See also*, *id*. at 35 ("I'm steady pleading for the ambulance, or 'please, can I go to the hospital? If not the hospital, please can I go to jail? Maybe someone will call the ambulance.'"). After Nash checked Plaintiff's driver's license, Lewis was finally

---

[1]  Lewis claims that earlier he had heard gunshots but denied that any of the shots had been directed at him. Lewis Dep. at 20.

[2]  Lewis also claims that, at some point, Nash and Folsom drove off and left him in the back of Nash's police vehicle. Lewis Dep., at 35.

2

dropped off at J. J. Mobile's, a store on Northside Drive in Jackson, Mississippi. *Id.*³ Lewis collapsed, and the owner of the store "actually pulled [Lewis] in the store and called the ambulance." *Id*. at 36. He was taken to the hospital, treated by a physician and stayed in the hospital until the following day. *Id*. at 36-37. Because of the events, Lewis claims that he suffered emotional, mental, and physical injuries, including, but not limited to his neck, ribs, right ankle, right toe, chest, right shoulder and his hand. *See* Pl. Amen. Compl., Docket No. 11, at 2-3.

### B. City of Jackson's/Kevin Nash's Version

Unsurprisingly, the City describes some of the events quite differently.⁴ According to the City, on June 12, 2011, after Plaintiff crashed his car into a tree, he left the vehicle and went to a nearby residence in search of assistance and knocked violently on the door. *See* Dep. of Off. Kevin Nash, at Exhibit B, Docket No. 49-2, at 36 (hereinafter "Nash Dep.").⁵ Fearing that Nash was a burglar, the residents of the home called the police. *Id*. Sometime after 1:00 a.m., Nash was dispatched to respond to a call regarding a house burglary in progress. Nash Dep., at 28, 33.

---

³    Lewis revealed in his testimony that he could not actually recall some of the specifics because he blacked out several times while detained; therefore, he was not entirely sure how long he was in the police car or if the officers actually took him to the scene of the shooting incident. Lewis Dep., at 17, 30, and 40. When asked how did he know he was in the back of Nash's patrol car for two to three hours, Plaintiff faintly answered that he knew "[b]ecause [of] the feeling of being in there." *Id*. at 40.

⁴    The City has violated Rule 7.2(E) of the Uniform Local Rules, which states that respondent's "original and rebuttal memorandum briefs together may not exceed thirty-five pages... ." This rule is there for a reason, and just as parties cannot simply ignore other rules, they should not disregard this rule. A similar violation in the future may lead to appropriate sanctions including the striking of the brief. *See*, *e.g.*, *Brooks v. Stringer*, 2:04 CV 120KS MTP, 2007 WL 1087487 (S.D. Miss. Apr. 10, 2007) (where court struck plaintiff's response for exceeding the thirty-five page limit).

⁵    Nash claims that he learned from the homeowners that Lewis "was knocking on the door violently trying to get in, and they were asking him what's wrong and who are you, and he wouldn't say anything, and that he ran on the side of the house . . . trying to get in." Nash Dep. at 36. Plaintiff denies this accusation. Lewis Dep., at 27. But, as will be noted below, this point of contention does not create a genuine issue.

Upon arriving at the scene with his lights and siren activated,[6] Nash saw Plaintiff attempting to get inside a house through a window and commanded him to "stop," but, after seeing Nash, Lewis fled the scene. *Id*. Nash chased the suspect, grabbed him by the shoulder, engaged in a struggle with him and eventually forced him to the ground and handcuffed him. *Id*. at 28-33.[7] *See also*, *id*. at 53 ("I had to wrestle him in handcuffs. He wasn't exactly cooperative."). Thereafter, Sergeant Folsom arrived at the scene, and Nash placed Plaintiff in the back of the police vehicle where he remained for only about 10 or 15 minutes. Nash Dep., at 63; Folsom Dep., at 37-38.

Folsom also asked Plaintiff about his condition and Plaintiff replied that he was "okay." Folsom Dep., at 18. Folsom and Nash both intimated that Plaintiff smelled like he had been drinking alcohol,[8] and he appeared to be "out of it." *Id*. at 20; Nash Dep., at 36.[9] Folsom questioned Nash as to why he was attempting to break into someone's home, and Plaintiff responded that he was actually looking for help. Folsom Dep., at 27 ("[Plaintiff said he] was not trying to burglarize their house. [He] was calling for help because . . . [he] went down the street and made a U-turn and people started firing at [him] . . ."). At this point, Folsom and Nash suspected that Lewis was actually the victim of the shooting and the person involved in the car wreck, so they unhandcuffed him and walked to the scene of the car accident. *Id*. Folsom then

---

[6] Nash explained that Plaintiff knew he was an Officer because of the flickering lights and loud sirens of the police vehicle. *Id*. at 31.

[7] While these events were taking place, Officer George Fields had been dispatched nearby in response to a shots fired call. *See* Dep. of Sgt. Barbara Folsom-McNeal, at Exhibit A, Docket No. 49-1, at 16 (hereinafter "Folsom Dep."). According to the City, Lewis' cousin's boyfriend shot at him after a night of drinking at a night club. This resulted in the shots fired dispatch.

[8] Plaintiff admitted that he had two or three alcoholic drinks that night. Lewis Dep., at 18-19.

[9] At some point, Folsom left Nash to check on the shots fired call, which, coincidentally, was around the corner to where Nash had been dispatched. Folsom Dep., at 25. After a short period of time, he walked back to Nash's location. *Id*. at 26. Nash informed Lewis that Plaintiff's vehicle hit a tree not far from the location of the shooting incident. *Id*.

questioned Lewis about both incidents and asked him several times if he was in need of medical attention. Lewis denied that he needed treatment and simply requested a ride home. *Id*. at 29.[10] After more questioning, Nash confirmed that Lewis was actually the passenger of the vehicle when it wrecked. In addition, the gunshots heard were likely fired at Lewis by his cousin's boyfriend.[11] *Id*. at 29, 33. Nash did not give Lewis a ride home, but merely dropped him off at a gas station, at Lewis's request so that Lewis could call someone to come get him. Nash Dep., at 42, 50,60 and 62.

On January 25, 2012, Lewis filed the instant lawsuit against the City of Jackson ("City"), Officer George A. Fields and Officer Kevin Nash in their official and individual capacities.[12] Docket No. 1. With respect to the City, Lewis contends that liability rests with it because of its failure to train its officers. As to the named officers, Lewis accuses them of using excessive force in violation of the Fourth Amendment and violating his due process and equal protection rights. *See* Pl. Amen. Compl., Docket No. 11. Lewis also asserts state law tort claims of negligent and/or intentional infliction of emotional distress, assault and battery, false arrest/imprisonment, and negligence *per se*. *Id*.

**II.     Legal Standard**

    *A.  Summary Judgment*

---

[10]    Nash was fairly adamant that Lewis declined medical attention and otherwise indicated that he was fine. *See* Nash Dep. at 42, 44, 47 and 48. Indeed, when Nash first saw Lewis he could not tell that Lewis might have been in a wreck because Lewis was "running just fine." *Id*. at 64.

[11]    In his deposition, Plaintiff denied that he was involved in or a victim of a shooting incident. Lewis Dep., at 21.

[12]    Plaintiff filed an Amended Complaint on May 1, 2012, Docket No. 11, and later dismissed the claim against Officer Fields in his individual capacity. Docket No. 14. Because an official-capacity suit is a suit against a municipality, *see*, *Martinez v. Maverick County*, 507 Fed.Appx. 446, 448 n.2 (5th Cir. 2013), the official capacity claims are subsumed in the municipal liability discussion below.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed.R.Civ.P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.,* 639 F.3d 214, 216 (5th Cir.2011) (citations omitted), but unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994).

### B. *Qualified Immunity*

Qualified immunity "protects government officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A two-part test is used to determine whether an officer is entitled to qualified immunity. *See, e.g., Martinez–Aguero v. Gonzalez,* 459 F.3d 618, 621 (5th Cir.2006). The Court must determine "(1) whether an official's conduct violated the plaintiff's constitutional rights, and (2) whether the right violated was clearly established at the time of the violation." *Poole v. City of Shreveport,* 691 F.3d 624, 637 (5th

Cir.2012) (citing *Pearson,* 555 U.S. at 232). The Court has discretion to decide which prong of the test should be answered first. *Id.* at 637–38.

### C. Law & Analysis

#### A. *False Arrest/False Imprisonment Under § 1983*

> To ultimately prevail on his section 1983 false arrest/false imprisonment claim, [Plaintiff] must show that [Nash] did not have probable cause to arrest him. … Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. . . . Therefore, [Nash] is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [Nash] was aware, there was a fair probability that [Plaintiff] had committed or was committing an offense. . . . Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004) (internal citations and quotations omitted).

In the case at bar, the parties provide two different stories as to how Nash encountered Plaintiff. Plaintiff alleges that when Nash found him and arrested him, he was walking down the street not far from his automobile accident searching for help. Defendant, however, alleges that, after being dispatched to a burglary in progress, Nash found Plaintiff outside of the residence from where the call was received, and when he arrived, it appeared to him that Lewis was trying to break in the home. Even viewing the totality of circumstances in the light most favorable to Plaintiff, a reasonable officer in Nash's position, based on the circumstances and the information of which Nash was aware, could have believed with fair probability that Plaintiff was the suspect associated with the burglary call. More to the point, the Court finds that a reasonable officer in Nash's position could have suspected that Plaintiff committed the burglary, given that when

Nash saw Plaintiff, he was roaming the streets around 1:00 a.m. near the residence to which Nash was dispatched. Even if the encounter between the individuals occurred as described by Lewis, Nash has sufficient justification to stop Lewis.

Plaintiff argues that he never committed a crime and he was simply looking for help when Nash found him, placed him in handcuffs and placed him into the back of a police vehicle. But, it does not matter that Nash was mistaken in determining that Lewis was the burglar: Probable cause existed for Lewis's detention, and Nash's suspicions and actions were reasonable. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). Thus, Nash is entitled to qualified immunity from Plaintiff's false arrest/false imprisonment claim under § 1983.

### B. Excessive Force Claim against Officer Nash

The reasonableness standard of the Fourth Amendment is used to analyze excessive force claims. *See Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 409, (U.S. 2012). "To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id*. (internal citations and quotation marks omitted).

"[T]he plaintiff's asserted injury must be more than *de minimis*," which is determined by "look[ing] to the context in which that force was deployed." *Freeman v. Gore*, 483 F.3d 404, 416-417 (5th Cir. 2007) (citations and quotation marks omitted). Moreover, the excessive force claim must be analyzed "without regard to whether the arrest itself was justified." *Id*. at 417 (citing *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc) ("[I]n a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for

8

unlawful arrest or detention but not an additional claim for excessive force."); *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."); *Bodine v. Warwick*, 72 F.3d 393, 400 n. 10 (3d Cir. 1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention.")).

In *Brown v. Lippard*, 472 F.3d 384, 388 (5th 2006), the Fifth Circuit noted that, although "[t]he Supreme Court . . . was concerned with a *de minimus* use of *force* showing, not a *de minimus injury* . . . [the Fifth] Circuit has on occasion referred to *de minimus* injuries, . . . with the caveat that when the force is "repugnant to the conscience of mankind" the gravity of the injury *may* be irrelevant." *Id*. (emphasis added). As such, this Court may look to whether there was a *de minimus* injury; if not, the Court may look to whether "the force used is of the kind repugnant to the conscience of mankind." *Id*. (citations and quotation marks omitted).

Plaintiff concedes that his neck, shoulder and chest were injured during the car wreck. He argues that when placing him under arrest, Nash forced him to the ground, stepped on his back and "pulled [his] arms back as far as he could and place[ed] him in handcuffs." Plt's Mem. of Law in Opp. to Defs City of Jackson's and Kevin Nash's, Mot. for Summ. Judg., Docket No. 52, at 6.[13] This aggressive arrest, Lewis contends, exacerbated his pain in those areas, prompting greater pain over his "whole body." *Id*. at 9.

---

[13] It appears that what Nash has described is the well known take-down technique designed to bring suspects to the ground—face down to allow handcuffing. *See Rubio v. Larkin*, Civil No. 07-5156, 2010 WL 2134270, at *6 (W.D. Ark. May 26, 2010) (citing *Wright v. City of Canton, Ohio*, 138 F.Supp.2d 955, 959 (N.D. Ohio 2001)).

9

Accepting these allegations as true, the Court finds that Nash's arrest produced minimal injury to Plaintiff. According to Plaintiff's version of the facts, the alleged injuries he suffered during his arrest cannot be separated from the injuries caused by the deployment of the air bag during the car crash. At the time Nash arrested Plaintiff, Nash did not know Plaintiff suffered injuries from a car accident, and therefore the brief, "shoulder take-down" technique employed to effectuate the arrest was reasonable in order to carry out the detention. *See Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (although the plaintiff suffered various injuries during the course of a search, the court ruled that the injuries were *de minimus*, stating, "[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results").

In addition, the force used cannot be said to be "repugnant to the conscience of mankind." *See Lippard*, 472 F.3d at 388 (noting that conduct such as "beating a man on the ground who is handcuffed" is the sort of conduct which satisfies the "repugnant to the conscience test."). The fact that Nash put his foot on Plaintiff's back does not change this conclusion as such force can sometimes be expected if an officer is attempting to arrest a suspect. Lewis has presented no evidence that the force Nash employed to effectuate the arrest was greater than necessary in order to restrain him. *See Weldy v. Hatch*, 481 F. App'x 119, 123 (5th Cir. 2012).

In light of these factors (especially given that Nash had no knowledge of Plaintiff's prior injuries), the pain in which Plaintiff suffered does not amount to injury sufficient to allege a constitutional violation of excessive force. Even if Plaintiff sustained injuries that rose to the level of a constitutional violation, Plaintiff cannot show that those injuries resulted "*directly and only* from the use of force that was clearly excessive," as Defendant's actions were not the

10

primary source of Plaintiff's injuries. *Elizondo*, 671 F.3d at 510 (emphasis added). Thus, Plaintiff's excessive force claim must fail.

### C. Claims against the City

A city is not liable under 42 U.S. C. § 1983 on the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 698 (1978). In order for a plaintiff to hold a municipality liable under § 1983, the plaintiff must prove three elements: 1) a policymaker that can be charged with actual or constructive knowledge of 2) an official policy (or custom), and 3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 698 (1978)). In *Gates v. Texas Dep't of Protective & Regulatory Serv.*, the court explained that:

> A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

537 F.3d 404, 436 (5th Cir. 2008) (citations omitted). Plaintff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). "The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Bd. of Cnty. Comm. v. Brown*, 520 U.S. 397, 415 (1997)).

The Plaintiff has put forth no evidence to hold the City liable. Nowhere in the record has Plaintiff identified a policymaker for which the City could be held liable under 42 U.S.C. § 1983.

Nor has Plaintiff established the existence of a policy or that the policy was the moving force behind the violation. Thus, Plaintiff's municipal liability claim against the City must fail.

### *i. Failure to Train*

Plaintiff also argues that the City is liable because it failed to adequately train or supervise police officers in handling injured "arrestees." In a § 1983 claim for failure to supervise or train, the standard is similar to municipal liability. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Id.*, at 544 (citations omitted). "To establish deliberate indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations marks and citation omitted).

Plaintiff has not produced sufficient evidence to hold the City liable for failure to train its officers. Lewis argues that the "City's policy or custom of merely dropping off an injured citizen, who has been falsely arrested, at a random location, instead of transporting said individual to the nearest medical facility, certainly demonstrates . . . City's failure to properly train its officers, as well as, demonstrates that said custom or policy shows deliberate indifference to the injured citizen's health and well-being." Docket No. 52, at 4-5. But, Lewis contradicts his own argument by citing Folsom's explanation that the City's policy "provides that if a prisoner refuses medical treatment, the individual must sign a refusal slip . . ." *Id.* at 4. This statement suggests that Plaintiff is not arguing that the City's policy was inadequate, but

rather that its Officers improperly followed the established policy. Based on this assertion, it appears that Plaintiff seeks to hold the City liable for the actions of one or two police officers who failed to carry out the City's policy. But, a City cannot be liable in such cases where its officer commits an isolated, negligent act. *See Evans v. City of Marlin, Tex.*, 986 F.2d 104, 108 (5th Cir. 1993) (holding that "the negligent acts of an official will not support liability under § 1983). There is no respondeat superior liability of a municipal liability for its employees negligent or even grossly negligent conduct. *Monell*, 436 U.S. at 691.

Claims of inadequate training generally require that plaintiff demonstrate a pattern. *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n.34 (5th Cir. 2005) (citation omitted). Construing the evidence in favor of Lewis still leaves the Court with no option but to rule in favor of the City because Lewis has offered no evidence other than a single, alleged violation. *Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008) (citing *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001) ("Proof of more than a single instance. . . is required before such lack of training can constitute deliberate indifference."). Furthermore, the plaintiff must "demonstrate that the municipality had notice of a pattern of prior acts fairly similar to what ultimately transpired." *Lewis*, 289 Fed.App'x at 772 (citation and quotation omitted). There is no such evidence. Finally, Plaintiff failed to provide evidence that the officers refused him medical treatment because they were trained to do so. In other words, Lewis has not linked a municipal policy to the constitutional violation. Therefore, Plaintiff's failure to train claim must fail. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 393 (5th Cir. 1992).

### ii. *Equal Protection*

Plaintiff also maintains that the City violated his equal protection rights, claiming that "he was intentionally treated differently from others similarly situated, and there was no rational

basis for such treatment." Pl. Amen. Compl., Docket No. 11, at 5. He has not alleged membership in a class and therefore brings his claim as a class of one. In order for this claim to survive, Plaintiff must show "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for such treatment." *Lindquist v.City of Pasadena, Tex.*, 525 F.3d 383, 387 (5th Cir. 2008) (quoting *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

Plaintiff has not pointed to any specific evidence in the record to support his equal protection claim. There is no evidence that he was treated differently from other similarly situated individuals and that there is no rational basis for the difference of treatment. Without such evidence on this claim, the City is entitled to judgment as a matter of law. *McGee v. Montgomery*, No. 3:12cv181, 2013 WL 141153, at *3 (S.D. Miss. Jan. 11, 2103). Thus, Lewis's equal protection claim must also fail.

### iii. *Substantive Due Process*

"[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836, 118 S. Ct. 1708, 1711-12, 140 L. Ed. 2d 1043 (1998). The Fifth Circuit has "generally required plaintiffs to demonstrate that the defendant state official at a minimum acted with *deliberate* indifference toward the plaintiff." *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (citation and quotation marks omitted) (emphasis added). "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Id*. (citing *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Plaintiff complains that "Nash's attack upon Plaintiff violated Plaintiff's right to substantive due process, as . . . Nash's actions upon Plaintiff caused damage to . . . Plaintiff's bodily integrity, by viciously beating Plaintiff, and prohibiting medical treatment and/or Plaintiff's access to medical treatment." Docket No. 11, at 5. Plaintiff's contention for a substantive due process claim overlaps his claim that Nash violated the Fourth Amendment through use of excessive force. Indeed, they are the same. The Supreme Court is clear that "all claims that law enforcement officers have used excessive force . . . *in the course of an arrest, investigatory stop, or other seizure* should be analyzed under the Fourth Amendment." *Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998) (citations and quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, at 395, 109 S.Ct. at 1871 (1989) (emphasis added)).

Plaintiff attempts to recast his Fourth Amendment excessive force argument as a substantive due process claim under the Fourteenth Amendment. However, substantive due process analysis is preserved "for those instances in which a free citizen is denied his or her constitutional right to life through means other than a law enforcement official's arrest, investigatory stop or other seizure." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844, (1998) (citation omitted). The Court holds that Plaintiff's claim has already been properly analyzed under the Fourth Amendment's reasonableness standard. Accordingly, Plaintiff's substantive due process claim fails. *See Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 608 (S.D. Tex. 2009)  (a plaintiff may bring a substantive "due process" claim under the Fourteenth Amendment only if the claim alleged is not susceptible to proper analysis under a specific constitutional source (citing *Petta*, 143 F.3d at 901)).

Moreover, even if Plaintiff's claim were allowed to proceed, Lewis has not shown how Nash's conduct rose to the cognizable level of an abuse of power necessary to establish a

substantive due process violation. That is, Nash's conduct did not rise to the requisite conscience shocking level. Nash did not know that Plaintiff was involved in an accident at the time he arrested him. Nor did he see any visible signs that Plaintiff was in need of immediate medical attention; he was not required to treat the suspect gingerly.

In addition, Plaintiff does not show how Nash's failure to provide medical treatment resulted in injury or worsened his pre-existing injuries. Even viewing the evidence in a light most favorable to the Plaintiff, as we must, the force used by Nash's actions was negligible, but certainly no more than necessary to effectuate Lewis's arrest. *See Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.") (citing *Daniels v. Williams*, 474 U.S. 327, at 348 (1986)); *see also Santibanes*, 654 F.Supp.2d at 610 ("Deliberate indifference . . . may not be inferred merely from a negligent, or even a grossly negligent, response to a substantial risk of serious harm." (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, at 459 (5th Cir. 2011))). For these same reasons, Plaintiff's procedural due process claim must also fail. *See id.* ("*Daniels* applies to substantive, as well as procedural, due process.") (citations omitted).

### D. State Law Claim

The Mississippi Tort Claims Act (MTCA), codified as Mississippi Code Annotated Section 11-46-1 et seq., is the exclusive remedy by which to bring tort claims against a governmental entity or its employees. *See L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136, 1138 (Miss. 1999); *see also* Miss. Code Ann. § 11-46-5 (Rev. 2002). There is "a rebuttable presumption that any act or omission of an employee within the time and at a place of his employment is within the course and scope of his employment." Miss. Code Ann. § 11-46-5(3); *see Graves v. Hinds County, Miss.*, 2012 WL 2574494, at *4 (S.D. Miss. July 2, 2002) (citing

*Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So.2d 684, 687 (Miss. 2006)). As in *Herman v. City of Shannon, MS*, 296 F.Supp.2d 709 (N. D. Miss. 2003), the nature of Plaintiff's state law claims is unclear. For example, there is no mention of the MTCA in Plaintiff's original or amended complaint, which calls into question whether the state claims were brought under the statute. *Id.* Nor does the record indicate whether Plaintiff complied with the MTCA's notice requirements, which suggests that he has attempted to bring the state tort claims against Nash in his personal capacity only. *See id.,* at 714 ("[U]nder Mississippi law, plaintiff may only assert state law claims outside the scope of the MTCA against the individual officers (as opposed to the City), and only if the officers' alleged misconduct is deemed to fall outside the scope and course of their employment.").

Because Plaintiff does not appear to have brought his claims under the MTCA, the Court will assume that Plaintiff's state law claims have been asserted outside the scope of the MTCA against Officer Nash in his personal capacity. In order for an employee's actions to be considered outside the course and scope of employment so as to be held individually liable, however, the Plaintiff must show that the employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than a traffic violation. *Id*.; *see also* Miss. Code Ann. § 11-46-5(2) (Rev. 2002). Plaintiff has not provided any evidence showing that Officer Nash acted outside the course and scope of employment. [14]

---

[14] Even assuming Plaintiff properly brought state law claims under the MTCA against the City, the City is entitled to immunity. Accepting the facts alleged by Plaintiff as true, Plaintiff has not alleged facts showing how Nash's conduct rose to the level of reckless disregard to Plaintiff's safety and well-being, as required in order to hold the City liable under the MTCA in this suit. *See Spencer v. City of Jackson, Miss.*, 511 F. Supp. 2d 671, 674-75 (S.D. Miss. 2007) (City or its employees "acting in the course and scope of employment or duties *shall not* be liable for any claim: . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in *reckless disregard of the safety and well being* of any person not engaged in criminal activity at the time of injury." (citing Miss. Code Ann. § 11-46-9(1)(c) (emphasis added))); *see also Craddock v. Hicks*, 314 F. Supp. 2d 648, 654 (N.D. Miss. 2003).

The Court is therefore bound to dismiss the state law claims against Officer Nash. *Herman*, 296 F.Supp.2d at 715. Nash acted within the course and scope of his employment and there is no genuine issue of material fact as to this finding.

### III. Conclusion

For the reasons explained above, the Defendant's motion for summary judgment is GRANTED.

**SO ORDERED**, this the 24th day of January, 2014.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
